MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2016 ME 113
Docket:        And-15-586
Submitted
  On Briefs:   May 26, 2016
Decided:       July 19, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE ADDEN B.


HUMPHREY, J.

[¶1]  The father of Adden B. appeals from a judgment of the District Court (Lewiston, *Oram, J.*) terminating his parental rights as to his son pursuant to 22 M.R.S. § 4055(1)(A), (B)(2)(b)(i)-(ii) (2015).  The father contends that the court violated the Due Process Clauses of the United States and Maine Constitutions by conducting the termination hearing in his absence.  *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.  Because we conclude that the father was afforded sufficient process by the District Court, we affirm.

## I.  BACKGROUND

[¶2]  Gary and Roseanne B. are the biological parents of Adden B., who entered foster care on September 27, 2014, one day after his birth, because the Department of Health and Human Services had received a report that both parents had significant mental health issues, that there was domestic violence in the relationship, and that the mother reported that she did not want the child.  The

2

Department's petition for a preliminary protection order was granted. In January 2015, after a hearing, the court (*L. Walker, J.*) made a finding of jeopardy as to the father based on domestic violence, "unmanaged mental health and/or anger management problems which cause[d] impulsive, angry, sometimes violent behaviors," and his status as a sexual offender based on a 2005 conviction for indecent assault and battery on a child younger than fourteen for which he had never been treated. The court ordered the father to participate in mental health counseling, a psychosexual evaluation, sexual offender treatment, a certified Batterers' Intervention Program, and parenting education classes.

[¶3] In April 2015, the Department filed a petition to terminate the father's parental rights, alleging, inter alia, that he had not taken any steps toward rehabilitation and reunification as outlined in his reunification plan, including that he refused to undergo sexual offender or mental health treatment. The court (*Oram, J.*) held a hearing on the petition on Wednesday, September 30, 2015.

[¶4] At the commencement of the termination hearing, the father told the court

> I've been puking all morning, and I've had a fever, hot and cold flashes, coughing . . . I'm not doing well while I'm down here in the rain just because I knew I had to be here. But I can't keep making trips back and forth in the rain with – as sick as I am. . . . I've already hit the bathroom like four times and ended up puking up my breakfast this morning. And I'm just – I'm not doing good.

. . . .

> With as sick as I am, I can barely concentrate.  I mean, I can barely stay awake out there. . . .  I can barely think, I can barely process. . . . And I want to be able to be at 100 percent if I'm going to be fighting for my son.

The court responded,

> If you feel that you are so acutely ill that you cannot wait and that you need immediate medical attention I certainly don't wish to keep you from getting that immediate medical attention.
>
> . . .
>
> [I]t's your choice to make; and I'm not going to tell you not to go get medical care that you think you need.  What I am going to do is this, if you feel you need to leave and not come back . . . we'll let the Department put on the evidence that they would put on . . . and I'd give you a week to get me a doctor's note that says, on medical advice you were unable to participate in court today.
>
> . . . .
>
> And if I get that from you . . . then we'll reschedule this hearing and start over.

With a promise that he would deliver a note the following Monday, and after further colloquy with the court regarding what the court would require to grant a de novo hearing, the father left the courthouse.  The court noted on the record that the father "did not appear or sound unwell."  His attorney remained for the proceeding and cross-examined both of the Department's witnesses, but he did not present any

4

witnesses on behalf of the father. The father never filed a doctor's note and no re-hearing was scheduled.

[¶5] In an order dated October 23, 2015, the court terminated the father's parental rights. *See* 22 M.R.S. § 4055 (2015). The court stated that, because the father failed to remain in court or participate in the hearing and failed to file a note from a medical provider indicating that he sought treatment that morning, it drew "a negative conclusion" from his absence. It found that the father had not had any contact with the child since September 2014, and that he refused to engage in services or meet with the Department until August 2015. The court also found that the father had not begun any evaluations or treatment to alleviate jeopardy, and "jeopardy remain[ed] unresolved."

[¶6] Based on the father's "complete refusal to acknowledge jeopardy or take any of the steps the court ordered him to take," the court concluded that he was unwilling or unable to protect the child from jeopardy and unwilling or unable to take responsibility for him within a time reasonably calculated to meet the child's needs. As to the best interest analysis, the court found that the father's "unwillingness and inability to accept responsibility for his actions, and his unwillingness to engage in any reunification services for a period of more than six months all present[ed] an obstacle to permanency by placement with him." The father timely appealed.

## II. DISCUSSION

[¶7]  The father contends that the court violated his right to due process by conducting the termination hearing in his absence when he left the courthouse due to an "acute illness."  We review de novo whether an individual was afforded procedural due process.  *State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432.  *See also In re Robert S.*, 2009 ME 18, ¶ 12, 966 A.2d 894.

> When due process is implicated, we review such procedural rulings to determine whether the process struck a balance between competing concerns that was fundamentally fair.  The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  It is a flexible concept that calls for such procedural protections as the particular situation demands.

*In re M.P.*, 2015 ME 138, ¶ 30, 126 A.3d 718 (quotation marks omitted) (citations omitted).  As applied to a termination hearing, "balancing the interests, where significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial factfinder."  *In re A.M.*, 2012 ME 118, ¶ 16, 55 A.3d 463 (quotation marks omitted).

[¶8]  The father contends that his absence was "involuntary" due to his illness.  "When incarceration is not involved and a parent fails to appear, courts generally discern no . . . violation of due process in proceeding with the hearing if the parent's absence was occasioned by circumstances voluntarily created by that

6

parent." *Id.* ¶ 19. We conclude that the father's departure from the courthouse was voluntary. First, although suffering from an illness itself is not a voluntary act, the father has cited no authority supporting the proposition that removing himself from the courtroom due to alleged cold or flu symptoms and not returning was an "involuntary" action. Second, the court questioned the father's credibility regarding his alleged illness, stating, "[i]t was not entirely apparent to me just from observing [the father's] demeanor and tone of voice and his appearance that he was unwell. Sometimes when people are unwell you can—the color of their skin, the tone of their voice, the way their face looks—we can often look at people and say they look unwell." Finally, the court provided the father the opportunity to have a de novo hearing if he verified his health condition by providing medical documentation within a week's time. The father's failure to avail himself of this opportunity cannot be said to be involuntary.

[¶9] Applying the due process requirements set forth in *In re A.M.* to the facts of the case here, the father had notice of the issues because he was served with a copy of the petition for termination of his parental rights. *See id.* ¶ 16. He had an opportunity, but declined to be heard either by staying at the courthouse and participating in the hearing or by submitting a doctor's note and being granted a de novo hearing, *see id.*, and he also had the opportunity, at the hearing that *was* held, to examine witnesses and respond to claims and evidence through his attorney,

who represented his interests during the hearing. *See id.* Lastly, there is no contention that the fact-finder was not impartial. *See id.*

[¶10]  The father also made no effort to seek relief through other post-judgment action such as filing a motion to leave the record open if he needed more time to get a medical note, *see* M.R. Civ. P. 7(b), filing a motion for new trial, *see* M.R. Civ. P. 59, or filing a motion for relief from judgment, *see* M.R. Civ. P. 60(b)(6); *In re A.M.*, 2012 ME 118, ¶ 23, 55 A.3d 463.  Finally, he does not argue that his participation at the hearing would have affected the outcome of the case.  *See In re A.M.*, 2012 ME 118, ¶¶ 24-25, 55 A.3d 463 (stating, "[t]he mother's failure to explain on appeal how her absence . . . could have affected the trial or its outcome is relevant in determining on appeal whether she has been deprived of due process").  For these reasons, we conclude that the court did not violate the father's due process rights when it conducted the termination hearing in his absence.

The entry is:

Judgment affirmed.

**On the briefs:**

Richard Charest, Esq., Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2014-71
FOR CLERK REFERENCE ONLY